**MITCHELL SCHOOL DISTRICT NO. 17–2, A Corporation, Plaintiff and Appellant,**

v.

**WELFL CONSTRUCTION COMPANY, A Corporation; Warren Dixon, Individually and As a Partner in Dixon & Brown; Harold W. Brown, As a Partner in Dixon & Brown; and Argyle R. Townswick, Defendants and Appellees,**

and

**Johnson Controls, Inc., A Corporation, Defendant and Appellant.**

Nos. 13429, 13430.

Supreme Court of South Dakota.

Considered on Briefs Nov. 19, 1982.

Decided Jan. 26, 1983.

John F. Cogley of Morgan, Fuller, Theeler & Cogley, Mitchell, for plaintiff and appellant Mitchell School Dist. No. 17–2.

Michael L. Luce and Lyle J. Wirt of Davenport, Evans, Hurwitz & Smith, Richard O. Gregerson of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellee Welfl Const. Co.

Leroy S. Lassegard, Mitchell, for defendant and appellee Warren Dixon.

Ronald W. Banks and Jerry D. Johnson of Banks & Johnson, Rapid City, for defendant and appellee Harold W. Brown.

Dennis R. Padrnos of Tinan, Padrnos, Smith & Saukerson, Mitchell, for defendant and appellee Argyle R. Townswick.

Edward J. Leahy of May, Johnson, Doyle & Becker, P.C., Sioux Falls, for defendant and appellant Johnson Controls, Inc.

WOLLMAN, Justice.

These are appeals from judgments on the pleadings entered in favor of appellees. We affirm.

▉ Appellant School District brought an action against appellees for deficiencies in the design, planning, supervision, and construction of the swimming pool area of a junior high school building in which construction was completed in 1969. Appellant School District also sued appellant Johnson Controls, Inc., for failing to properly service and maintain the environmental control system over the swimming pool area. The complaint alleges that the defects and deficiencies were not discovered until 1979. The trial court dismissed appellees from the action on the basis of SDCL 15–2–9, which provides:

> No action to recover damages for any injury to real or personal property, for personal injury or death arising out of any deficiency in the design, planning, supervision, inspection and observation of construction, or construction, of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, may be brought against any person performing or furnishing the design, planning, supervision, inspection and observation of construction, or construction, of such an improvement more than six years after substantial completion of such construction. Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or his representative can occupy or use the improvement for the use it was intended.*

Appellants raise constitutional issues similar to those that were considered and rejected by this court in *McMacken v. State*, 320 N.W.2d 131 (S.D.1982), *aff'd on rehearing*, 325 N.W.2d 60 (S.D.1982). Accordingly, we need not give those issues further consideration.

▉ Appellants rely upon *Kittson County v. Wells, Denbrook & Assoc., Inc.*, 241 N.W.2d 799 (Minn.1976), in contending that

---

* The trial court quite properly certified the judgments to be final pursuant to SDCL 15–6– 54(b).

SDCL 15–2–9 does not apply to contract and tort claims by the owner against the persons who contracted with the owner for the design and construction of an improvement to real property.

We note that the Minnesota court reached its decision in that case only on the basis of an avowedly narrow reading of the Minnesota statute in an attempt, futile in the event, see *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977), to avoid constitutional questions. Having in *McMacken* grappled with and decided the constitutional questions, we are not constrained or persuaded that our statute should be narrowly read in order to give an owner of property a cause of action that we held in *McMacken* was denied to a party seeking recovery for personal injuries. We cannot believe that the legislature intended that there should be disparate treatment of parties, depending upon whether the injury was to body or in fisc, and thus we affirm the trial court's holding that SDCL 15–2–9 bars appellant School District's claims against appellees.

The judgments are affirmed.

DOBBERPUHL, Circuit Judge, and McKEEVER, Circuit Judge, concur.

DUNN and HENDERSON, JJ., dissent.

DOBBERPUHL, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.

McKEEVER, Circuit Judge, sitting for MORGAN, J., disqualified.

DUNN, Justice (dissenting).

I would dissent for all of the reasons stated in the dissenting opinion in *McMacken v. State*, 320 N.W.2d 131 (S.D.1982), affirmed on rehearing, 325 N.W.2d 60 (S.D. 1982).

HENDERSON, Justice (dissenting).

The seed of this decision was first planted in the soil of *McMacken v. State*, 320 N.W.2d 131 (S.D.1982), aff'd. on rehearing, 325 N.W.2d 60 (S.D.1982) (Henderson, Justice, dissenting in both, as well as Justice Dunn). It is now watered by one member

of this Court and two trial judges who have been appointed to consider this appeal. This appeal was not argued in open court and was considered on briefs. I shall not help cultivate, nor nurture, a crop which denies a basic right of this school district to sue for a wrong. Can it be said that the Mitchell School District slept on its rights when it discovered the deficiencies in 1979 and started suit in 1980? I think not. This decision aggrieves fundamental fairness, our State and National Constitutions, and I therefore dissent.

*McMacken* was an action in tort. Here, this action was to recover damages for defects and deficiencies arising out of construction of a junior high school. The school district's complaint alleges four theories. They are negligence, breach of contract, breach of implied warranty and misrepresentation. Negligence is a wrong recognized by the law of South Dakota. See SDCL 20–9–1, 21–1–1, and 21–3–1. Breach of contract is a wrong recognized by the law of South Dakota. See SDCL 21–1–1 and 21–2–1. Breach of an implied warranty with respect to the construction of improvements to real property is likewise a wrong recognized by this State. See *Waggoner v. Midwestern Development, Inc.*, 83 S.D. 57, 154 N.W.2d 803 (1967). Misrepresentation is a wrong recognized by the law of this State. See SDCL 20–10–1 and 20–10–2. None of these wrongs are eliminated by the statute in question. Rather, it is the remedy for these wrongs that is eliminated after the expiration of six years.

Statutes of limitation are designed to eliminate a remedy after the passage of time subsequent to the incidence of the injury or wrong. They are intended to eliminate fraudulent and stale claims. *Hinkle v. Hargens*, 76 S.D. 520, 81 N.W.2d 888 (1957). SDCL 15–2–9 bears no relationship to fraudulent or stale claims. It simply eliminates the remedy for the wrongs. Until such time as there is a physical manifestation of a deficiency, there has been no breach of warranty. Until the structure actually fails, the owner cannot discover the breach. The Supreme Court of Michigan

has ruled that a cause of action for breach of construction contract arises when the breach is discovered or reasonably should have been discovered. *Weeks v. Slavik Builders, Inc.,* 384 Mich. 257, 181 N.W.2d 271 (1970).

This school district stands in contractual privity with the defendants-appellees. If one reads SDCL 15–2–9 closely, it becomes apparent that the statute addresses itself to tort and to "injury." The statute refers to "personal injury or death" and it requires that the injury arise out of a "deficiency." This statute was conceptually designed to afford protection to architects, engineers, and builders from liability to third parties. It was not structured to offer a blanket of protection and immunity towards parties in direct privity with them. Thus, this action not being in tort, and the Mitchell School District standing in clear contractual privity, the statute should not be permitted to stand as a bar to that school district's cause of action. Assuming arguendo that the statute is constitutional, the application of the statute should be confined to actions by those not in privity with the party asserting the statute as a bar to the action.

I have assaulted this statute twice before and intend, hereby, to flail it again. This statute creates two separate classifications. This violates the equal protection guarantees of Art. VI, § 18 of the South Dakota Constitution and the Fourteenth Amendment to the United States Constitution. Under classification one, such individuals as architects, builders, and engineers are granted total immunity from suit six years after substantial completion. Yet, owners and tenants are denied such immunity and are denied the right of contribution or indemnity against architects, builders, and engineers. As regards the second classification, a person who is injured as a result of a deficiency in the design, planning, suspension, inspection, or observation of construction within six years of the date of substantial completion can assert his tort against the tortfeasor, but one injured a day or two after the six-year period has no such right. A crucial question exists. Did the Legislature, by its classification, create a statute which was reasonable and not arbitrary? A two-prong test should be utilized in determining whether SDCL 15–2–9 violates the equal protection guarantees. This two-prong test was set forth in *City of Aberdeen v. Meidinger,* 89 S.D. 412, 233 N.W.2d 331 (1975), and essentially was applied in *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). This statute violates that two-pronged test.

If architects, builders, and engineers have immunity and owners and tenants do not, an arbitrary classification has been created. The equal protection of the United States Constitution does not deny the state the power to classify, but does require a reasonable basis for the classification. *Morey v. Doud,* 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). Grants of special or exclusive privilege are not forbidden where the main purpose for the grant is the promotion of the public interest. But these grants are prohibited where they are for private benefit. *Matter of Certain Territorial Elec. Boundaries, Etc.,* 281 N.W.2d 65 (S.D.1979). Any reasonable man can take a look at this statute and discern that its total and obvious intent is to serve the private interests of those named in the statute whom are granted immunity.

Those who serve in the legislative branch or wear the robe of a judge or justice, must first seek guidance and support in enacting laws and writing decisions from the Constitutions, State and Federal. The Constitution in each state is the mother law. Harken unto the language of Art. III, § 23 of the South Dakota Constitution when it tells us expressly: "Private and special laws [are] prohibited." It states, in pertinent part:

The Legislature is prohibited from enacting any private or special laws in the following cases:

\*　　\*　　\*　　\*　　\*　　\*

9. Granting to an individual, association or corporation any special or exclusive privilege, immunity or franchise whatever.

Again, in Art. VI, § 18, our State Constitution in plain, unmistakable language provides: "Equal privileges or immunities." It states:

No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations.

The Wyoming Supreme Court in *Phillips v. ABC Builders, Inc.*, 611 P.2d 821 (Wyo. 1980), referred to a statute such as ours as being "not a statute of limitations but [is] a grant of immunity from suit. This immunity is conferred only on a narrow spectrum of defendants."

I would reverse the trial court and declare this statute unconstitutional. Article III, § 23 and Art. VI, § 18 of the South Dakota Constitution are constitutional guarantees, found in the Bill of Rights and admonish in plain and simple terms, that all South Dakotans be treated equally under the law. The statute under attack does not serve the principle of equality. It serves a narrow spectrum.

I am sustained by the reflection that time may recognize the validity of my viewpoint. If it does not, then contemporarily I have sought to protect the Constitution against the onslaught of private legislation.