Dorothy A. DAUGAARD, Executrix of the Estate of Dwight R. Daugaard, Deceased (# 14052 and # 14170)

and

Darwin R. Daugaard (# 14053 and # 14171)

and

Daniel Chmela (# 14129)

and

Clair Hines and Linda Hines (# 14136), Plaintiffs and Appellants,

v.

The BALTIC COOPERATIVE BUILD-ING SUPPLY ASSOCIATION, a South Dakota Cooperative Association (# 14144), Defendant and Appellee,

and

Baltic Farmers Elevator Company, a South Dakota Cooperative Association; and Tri-State Insurance Company of Minnesota, a Minnesota Corporation, Defendants,

and

Koopman & Sons Gas Company, Inc., a South Dakota Corporation; Leroy Koopman; Don Koopman; Helen Koopman (# 14146)

and

Minnehaha Cooperative Oil Company, a South Dakota Cooperative Association, Defendants and Appellees,

and

Crane Co., an Illinois Corporation (# 14117, # 14118, # 14153, # 14154), Defendant-Appellee and Third Party Plaintiff,

and

United States Steel Corporation, a Delaware Corporation

and

Republic Steel Corporation, a New Jersey Corporation, Third Party Defendants and Appellees.

Supreme Court of South Dakota.

Argued Sept. 12, 1983.

Decided May 2, 1984.

Rehearing Denied June 7, 1984.

Terry N. Prendergast and Gary J. Pashby of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for plaintiffs and appellants Daugaards, Chmela, and Hines.

Thomas M. Frankman of Willy, Pruitt, Matthews, Farrell, Frankman & Johnson, Sioux Falls, on the brief for plaintiff and appellant Chmela.

William F. Day, Jr., of Day, Grossenburg & Whiting, Winner, on the brief for plaintiffs and appellants Hines.

Edward J. Leahy of May, Johnson, Doyle & Becker, Sioux Falls, for defendant and appellee Baltic Co-op. Building Supply Ass'n.

Carleton R. Hoy and Michael F. Pieplow of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on the brief for defendant Baltic Farmers Elevator Co.

David Gerdes of May, Adam, Gerdes & Thompson, Pierre, on the brief for defendant Tri-State Ins. Co. of Minnesota.

John E. Simko of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants and appellees Koopman & Sons Gas Co., Inc., Leroy Koopman, Don Koopman, and Helen Koopman.

James E. Doyle of Doyle, Bierle, Porter & Kennedy, Yankton, on the brief for defendant and appellee Minnehaha Co-op. Oil Co.

James A. Wyly of Richardson, Groseclose, Kornmann, Wyly, Wise & Klinkel, Aberdeen, for defendant-appellee and third party plaintiff Crane Co.

Michael E. Ridgway and Gerald L. Reade, of Brady, Kabeiseman, Reade, Abbott & Johnson, Yankton, on the brief for third party defendant and appellee U.S. Steel Corp.

Joseph M. Butler of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, on

the brief for third party defendant and appellee Republic Steel Corp.

HENDERSON, Justice.

## PREFACE

This action is a complicated consolidation of four primary actions seeking damages emanating from a propane gas explosion at the Baltic Farmers Elevator Company on May 28, 1980. The voluminous settled record, consisting of two large boxes, is digested for benefit of the parties, their attorneys, and a decision of this case. A recitation of the procedural history focuses the complexity of this litigation but the substantive aspect of this decision is riveted upon the unconstitutionality of two state statutes.

## PROCEDURAL HISTORY

In one action, appellants Claire Hines and Linda Hines (Hines) filed a complaint on March 30, 1981, against appellees Koopman & Sons Gas Company, Inc. (Koopman Gas), Helen Koopman (Koopman), and Baltic Farmers Elevator Company (Baltic Elevator). Answers were filed. Discovery commenced. Crane Company (Crane) became a defendant and brought in United States Steel Corporation (U.S. Steel) and Republic Steel Corporation (Republic) as third-party defendants via a third-party complaint. On June 28, 1982, Crane moved for summary judgment. U.S. Steel then moved for summary judgment on July 8, 1982. On July 26, 1982, counsel for Hines filed an affidavit in opposition to summary judgment. Crane filed a cross-claim against the other appellees on September 21, 1982. Koopman Gas and Koopman motioned to amend their answers and cross-claim against Baltic Elevator, the Baltic Cooperative Building Supply Association (Baltic Builders), Crane, U.S. Steel, and Republic. On November 24, 1982, Republic filed a motion for summary judgment. Affidavits in favor of, and in resistance to, the summary judgments were filed.

On January 20, 1983, the trial court entered findings granting summary judgment in favor of Crane. On February 1, 1983, the trial court entered an order allowing Hines to amend their complaint. Findings granting summary judgment in favor of U.S. Steel were entered on February 10, 1983, and for Republic on February 23, 1983. An amended complaint making Tri-State Insurance Company of Minnesota (Tri-State) a defendant and alleging concealment against some defendants was filed on March 10, 1983. On March 23, 1983, Hines filed a notice of appeal (#14136) to this Court from the summary judgment. On April 1, 1983, Koopman Gas and Koopman filed a notice of review (#14146) with this Court. On April 5, 1983, Crane filed a notice of review (#14154) with this Court.

In another action, appellant Daniel Chmela filed a complaint on April 13, 1982, against Baltic Elevator, Koopman Gas, Koopman, Leroy Koopman, Don Koopman, Minnehaha Cooperative Oil Company (Minnehaha Oil), Crane, U.S. Steel, and Republic. Answers were filed. Discovery commenced. Crane cross-claimed against all defendants. On May 21, 1982, Republic also cross-claimed against all defendants. Minnehaha Oil motioned for summary judgment on June 24, 1982, as did Crane on June 28, 1982, U.S. Steel on July 8, 1982, and all Koopman defendants on November 22, 1982. Affidavits were filed. All Koopman defendants motioned for an amended answer and cross-claimed against Baltic Elevator, Minnehaha Oil, Crane, U.S. Steel, and Republic. Republic motioned for summary judgment on November 24, 1982.

On January 20, 1983, the trial court entered findings granting summary judgment for Crane. On February 3, 1983, the trial court entered an order allowing Chmela to amend his complaint and also bring in Tri-State as a defendant. On February 4, 1983, findings were entered granting summary judgment for Minnehaha Oil. Chmela filed an amended complaint alleging concealment against some defendants on February 9, 1983. Findings allowing summary judgment for U.S. Steel were entered on February 10, 1983, and for Minnehaha Oil

on February 17, 1983. All of the Koopman defendants motioned for summary judgment on February 22, 1983. Findings granting summary judgment in favor of Republic were entered on February 23, 1983. Chmela appealed to this Court from the summary judgments (# 14129) on March 17, 1983. On April 5, 1983, Crane filed a notice of review (# 14153) with this Court. All Koopman defendants answered the amended complaint on June 14, 1983, and the individual Koopmans cross-claimed against Baltic Elevator and Tri-State.

In the third primary action, appellant Darwin R. Daugaard filed a complaint on October 14, 1981, against Baltic Builders, Baltic Elevator, Koopman Gas, Leroy Koopman, Don Koopman, Helen Koopman, Minnehaha Oil, Crane, U.S. Steel, and Republic. Answers were filed and discovery commenced. Crane cross-claimed against all defendants. On June 22, 1982, Baltic Builders motioned for summary judgment; Minnehaha Oil similarly motioned on June 24, 1982; Crane on June 28, 1982; U.S. Steel on July 8, 1982; and all Koopmans on November 22, 1982. Affidavits were filed.

On November 17, 1982, Darwin Daugaard motioned to amend his complaint. On November 22, 1982, all Koopmans cross-claimed against Baltic Builders, Baltic Elevator, Minnehaha Oil, Crane, U.S. Steel, and Republic. Republic motioned for summary judgment on November 24, 1982. Minnehaha Oil motioned for summary judgment against Crane on November 24, 1982. The trial court entered an order on December 10, 1982, allowing an amended complaint and summary judgments for Baltic Builders, Minnehaha Oil, Crane, U.S. Steel, and Republic. An amended complaint was filed on December 10, 1982, alleging concealment against all Koopmans and Baltic Elevator. Tri-State was brought in as a defendant. Nunc pro tunc orders were entered on December 16, 1982.

On January 20, 1983, Darwin Daugaard filed a notice of appeal (# 14053) to this Court from the summary judgments entered below. On February 9, 1983, Baltic Builders answered Darwin Daugaard's amended complaint, motioned for summary judgment, and answered the Koopmans' cross-claim. Tri-State answered the Koopmans' cross-claim on February 16, 1983. All Koopmans motioned for summary judgment on February 22, 1983. A petition for allowance of appeal from an intermediate order was filed by Darwin Daugaard with this Court on January 26, 1983. On February 22, 1983, this Court denied the petition. On March 14, 1983, Crane filed a notice of appeal (# 14118) with this Court from the summary judgments entered dismissing its cross-claims.

The trial court entered an order on March 23, 1983, granting summary judgment in favor of Baltic Builders against the amended complaint and the individual Koopmans' cross-claims. This order also denied the Koopmans' motion for summary judgment on the amended complaint. On April 13, 1983, Darwin Daugaard filed a notice of appeal (# 14171) to this Court from the trial court's summary judgment. On April 21, 1983, the trial court entered an amended order on the motions for summary judgment which granted the Koopman defendants a partial summary judgment against the amended complaint. Summary judgment was not granted in favor of the Koopmans for Daugaards' negligence, breach of warranty, strict liability, and violation of statute causes of action. An amended notice of appeal (# 14053) was filed with this Court on April 26, 1983. A stipulation allowing the amended appeal, to relate back to the original appeal, was filed on April 25, 1983.

In the final primary action consolidated herein, appellant Dorothy A. Daugaard as executrix of the estate of Dwight R. Daugaard, deceased, filed a complaint on January 2, 1981, against Baltic Builders, Baltic Elevator, Koopman Gas, and Crane. Answers were filed and discovery commenced. Crane cross-claimed against all other defendants on January 13, 1981. Baltic Builders cross-claimed against Crane and Crane answered on January 13, 1981. Crane motioned for summary judgment against appellant and Baltic Builders and

filed a "brief" on January 13, 1981. Baltic Elevator answered Crane's cross-claim on January 22, 1981. A stipulation was entered on January 22, 1981, allowing Crane to bring in U.S. Steel and Republic as third-party defendants. On June 7, 1982, Koopman Gas replied to Crane's cross-claim.

Baltic Builders motioned for summary judgment on June 22, 1982, as did Crane on June 28, 1982 and U.S. Steel on July 8, 1982. Dorothy Daugaard motioned for permission to file an amended complaint to include concealment against some defendants on November 17, 1982. Koopman Gas filed a motion for summary judgment on November 22, 1982.

The trial court entered an order on December 10, 1982, allowing an amended complaint featuring a concealment cause of action and summary judgment for Baltic Builders, Minnehaha Oil, Crane, U.S. Steel, and Republic. Koopman Gas' motion for summary judgment was denied. An amended complaint was filed by Dorothy Daugaard on December 10, 1982. A nunc pro tunc order was entered on December 16, 1982. Tri-State answered the amended complaint on January 12, 1983. On January 18, 1983, an additional nunc pro tunc order was entered. Dorothy Daugaard filed a notice of appeal to this Court (# 14052) from the summary judgments on January 20, 1983. Koopman Gas answered the amended complaint on February 7, 1983. The individual Koopmans also answered the amended complaint and cross-claimed against Baltic Builders, Baltic Elevator, and Tri-State on February 7, 1983. Baltic Builders answered the amended complaint and the Koopman cross-claim on February 9, 1983.

Baltic Builders motioned for summary judgment against the amended complaint on February 9, 1983. Tri-State answered Koopmans' cross-claim on February 16, 1983. All Koopman defendants motioned for summary judgment on February 22, 1983. A petition for allowance of appeal from an intermediate order was filed by Dorothy Daugaard with this Court on January 26, 1983. The petition was denied on February 22, 1983. Crane filed a notice of appeal (# 14117) to this Court on March 14, 1983. The trial court entered an order on March 23, 1983, granting Baltic Builders summary judgment against the amended complaint and the Koopmans' cross-claim. Koopmans' motion for summary judgment was denied. On March 30, 1983, Baltic Elevator filed a notice of review (# 14144) with this Court. On April 13, 1983, Dorothy Daugaard filed a notice of appeal (# 14170) to this Court from the summary judgments. On April 21, 1983, the trial court entered an amended order for summary judgment allowing the Koopman defendants a partial summary judgment as set forth above in Dwight Daugaard's action. Dorothy Daugaard filed an amended notice of appeal (# 14052) with this Court on April 26, 1983, and a stipulation allowing the amendment followed on April 25, 1983. A second amended notice of appeal (# 14052) was filed with this Court on May 5, 1983.

On August 18, 1983, this Court entered an order consolidating all of the above-referenced appeals and notices of review. We reverse and remand.

## FACTS

Baltic Elevator obtained the services of Baltic Builders in 1970 to install two underground liquified propane gas lines. Baltic Builders procured a quantity of steel pipe from Crane. On October 21 and 22, 1970, Baltic Builders trenched in two uncoated black iron pipes at Baltic Elevator. The trench was backfilled leaving capped ends of the pipes protruding above the soil. This installation failed to incorporate an anticorrosion system.

In May 1974, Koopman Gas delivered a rental propane tank to Baltic Elevator and hooked it up to the one-inch diameter unprotected pipe. At this juncture, it remains unclear when the other end of the pipe was ultimately connected to a grain dryer. Propane gas for the rented tank was purchased by Baltic Elevator from Koopman Gas in September 1975. From December 1972 through December 1979, Koopman

Gas delivered approximately 6,112 total gallons of propane gas to Baltic Elevator. In a much shorter time frame, from December 1979 to May 1980, Koopman Gas delivered 9,160 gallons of propane gas to Baltic Elevator. Koopman Gas delivered 750 gallons of propane gas in the rental tank on May 27, 1980, the day before the tragic event which underlies this litigation.

On the morning of May 28, 1980, several construction workers were repairing a portion of Baltic Elevator. Dwight Daugaard and his son Darwin were waiting to unload a truckful of corn. Three workers entered Baltic Elevator's basement to repair damage stemming from a recent fire. Suddenly, the entire basement was engulfed in flames; then an explosion ripped through Baltic Elevator. Most of the individual appellants herein are persons who suffered severe injuries in the explosion-fire. Mrs. Daugaard is the executrix of Dwight Daugaard, who perished from his injuries.

An investigation ensued culminating in the discovery of corrosion perforations through the one-inch steel pipe installed in 1970. It is alleged that the propane, which is heavier than air, leaked from the pipe and entered the elevator basement through its foundation. Allegedly, an accumulation of propane gas created a great explosion.

## ISSUE

WE REFINE THE VARIED ISSUES EXPRESSED IN THE KNOTTY AND MASSIVE BRIEFING IN THIS CASE. DO SDCL 15–2–9 AND SDCL 15–2–12.1 VIOLATE CONSTITUTIONAL PROVISIONS INSURING OPEN COURTS FOR REDRESS OF INJURY? WE HOLD THAT THEY DO.

## DECISION

"All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay." South Dakota Constitution art. VI, § 20.[1] Appellants assert SDCL 15–2–9 and SDCL 15–2–12.1[2] unconstitutionally locked the courtroom door before appellants had an opportunity to open it. We agree. As the United States Supreme Court has held: "What the Constitution does require is 'an *opportunity* ... granted at a meaningful time and in a meaningful manner ....'" *Boddie v. Connecticut*, 401 U.S. 371, 378,

---

1. The United States Constitution art. 14, § 1 provides, inter alia: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." South Dakota Constitution art. VI, § 2 provides: "No person shall be deprived of life, liberty or property without due process of law."

2. SDCL 15–2–9 provides:

   No action to recover damages for any injury to real or personal property, for personal injury or death arising out of any deficiency in the design, planning, supervision, inspection and observation of construction, or construction, of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, may be brought against any person performing or furnishing the design, planning, supervision, inspection and observation of construction, or construction, of such an improvement more than six years after substantial completion of such construction. Date of substantial comple-

tion shall be determined by the date when construction is sufficiently completed so that the owner or his representative can occupy or use the improvement for the use it was intended. SDCL 15–2–12.1 provides:

   In the application of any statute of limitations to a cause of action against a manufacturer, lessor or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, inspection, preparation, assembly, testing, packaging, labeling, or sale of any product or failure to warn or protect against a danger or hazard in the use, misuse or unintended use of any product, or the failure to provide proper instructions for the use of any product, the cause of action shall be barred if it accrues more than six years after the date of the delivery of the completed product to its first purchaser or lessee who was not engaged in the business of selling such product, regardless of the date the defect in the product was or should have been discovered. This section shall not apply to causes of action which have arisen prior to July 1, 1978.

91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971) (emphasis in original) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965)). "A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions." *Wilson v. Iseminger*, 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804, 807 (1902).

According to appellees and the recent majority opinion in *McMacken v. State*, 320 N.W.2d 131, *aff'd on rehearing*, 325 N.W.2d 60 (S.D.1982), appellants do not have a "vested right in the continued existence of an immutable body of negligence law ...." *McMacken*, 320 N.W.2d at 137 (quoting *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 279, 382 A.2d 715, 720–21 (1978)).

We agree that much of our negligence law is incapable of being cast in concrete for time immemorial. Negligence law must have some degree of flexibility. However, it is an entirely different and unacceptable proposition to assume that the flexibility of our negligence law may act in degradation of the fundamental foundations of our state constitution.

Our constitution, as enacted by our forefathers and occasionally amended, is solid core upon which all our state laws must be premised. Clearly and unequivocally, our constitution directs that the courts of this state shall be open to the injured and oppressed. We are unable to view this constitutional mandate as a faint echo to be skirted or ignored. Our constitution is free to provide greater protections for our citizens than are required under the federal constitution. *State v. Opperman*, 247 N.W.2d 673 (S.D.1976). Our constitution has spoken, and it is our duty to listen.

SDCL 15–2–9 and SDCL 15–2–12.1 are a locked deadbolt and shackle on our courtroom doors. We are unwilling to couch SDCL 15–2–9 and SDCL 15–2–12.1 in wishful language which portends their effect is somehow constitutional. SDCL 15–2–9 and SDCL 15–2–12.1 are statutes of nullification which stamp out our citizens' causes of action before they accrue. SDCL 15–2–9 and SDCL 15–2–12.1 have transgressed constitutional limitations and therefore it is our duty to declare these two statutes unconstitutional.

This is hardly the first expression of disapproval voiced towards these statutes of nullification. In *McMacken*, 320 N.W.2d at 140, Justice Dunn dissented, writing in part:

I am convinced that SDCL 15–2–9 is not a statute of limitations. Statutes of limitation proceed on the theory that a plaintiff has a full opportunity to try his rights in the courts within certain time limits. This statute bars all recovery without allowing any time for the commencement of an action, if the action accrues six years following the completion of a building. No action by a plaintiff can remedy the situation.

Another Justice likewise dissented in *McMacken*, writing in part:

I pose this question: How can a plaintiff be prevented from bringing a cause of action due to the passage of time prior to that action accruing? As stated in *Lamb v. Powder River Live Stock Co.*, 132 F. 434 (8th Cir.1904), the answer to this query is that it cannot, not without violating basic constitutional guarantees. Death cannot occur without there first being conception, nor dusk come without daylight. Neither can a cause of action expire before it accrues.

*Id.* at 141 (Henderson, J., dissenting). *See also, Mitchell Sch. Dist. No. 17–2 v. Welfl Constr.*, 329 N.W.2d 138, 140 (S.D.1983) (Dunn and Henderson, JJ., dissenting); *McMacken v. State*, 325 N.W.2d 60, 61 (S.D.1982), *on rehearing* (Dunn and Henderson, JJ., dissenting).

Several courts have held similar legislation unconstitutional. *See Jackson v. Mannesmann Demag Corp.*, 435 So.2d 725 (Ala.1983); *Heath v. Sears, Roebuck & Co.*, N.H., 464 A.2d 288 (1983); *Bolick v. American Barmag Corp.*, 54 N.C.App. 589, 284

S.E.2d 188 (1981), *modified and aff'd,* 306 N.C. 364, 293 S.E.2d 415 (1982); *Battilla v. Allis Chalmers Mfg. Co.,* 392 So.2d 874 (Fla.1980); *Overland Constr. Co., Inc. v. Sirmons,* 369 So.2d 572 (Fla.1979); *Saylor v. Hall,* 497 S.W.2d 218 (Ky.1973); *Phillips v. ABC Builders, Inc.,* 611 P.2d 821 (Wyo. 1980).[3]

Legal commentators have also expressed disapproval of statutes drafted in the same vein as SDCL 15–2–9 and SDCL 15–2–12.1:

> In barring actions which have yet to accrue, these statutes are unique, since a statute of limitations proceeds on the theory that a right of action exists, with the limitation defining the period for pursuit of judicial redress. For a statute to bar an action which has not accrued is anomalous; such a statute does not merely limit the remedy, but bars the right of action from ever coming into existence.
>
> \* \* \* \* \* \*
>
> ... While ostensibly statutes of limitations, they function to limit actions in only certain instances, if at all. The form of the limitation of actions statutes is utilized to abolish a right altogether.
>
> \* \* \* \* \* \*
>
> ... [U]sing a limitation [statute] to abolish a right altogether only serves to devitalize the theory, the policies, and the law of limitation of actions.

Cotter, *COMMENT/Limitation of Action Statutes for Architects and Builders— Blueprints for Non-action,* 18 Cath.U.L. Rev. 361, 372, 374, 379 (1968–69) (footnotes omitted).

We are compelled to express that in addition to potential causes of action for common law negligence[4] as existed in *McMacken,* 320 N.W.2d 131, and *Mitchell Sch. Dist.,* 329 N.W.2d 138, the injured parties at bar have statutory rights. In 1970, SDCL 34–39–10 provided authority for the predecessor of South Dakota's Department of Public Safety to promulgate regulations governing the design, location, installation, and operation of L.P. gas facilities. SDCL 34–39–10 expressly declared that the regulations "shall be such as are reasonably necessary for the protection of the health, welfare and safety of the public and persons using such materials ...."

Pursuant to SDCL 34–39–10, the predecessor to ARSD 61:12:01:02 was adopted incorporating the National Fire Protection Association pamphlet number 58, Storage and Handling of Liquefied Petroleum Gases. As in effect in 1970, section B.8.(k) of pamphlet number 58 provided: "Where soil conditions warrant, all piping shall be protected against corrosion." In 1974, ARSD 61:12:01:03 was created with the following language:

> No person, firm or corporation shall introduce liquefied petroleum gas into a dispensing or storage tank in this state with knowledge that such dispensing or storage tank, piping or installation is known to be unsuited to handle the product, in an unsafe operating condition or to be in violation of state law, rules and regulations or city ordinances.

In 1969, we held that violations of regulations promulgated under SDCL 34–39–10 were, as a matter of law, negligence. *Weeks v. Prostrollo Sons, Inc.,* 84 S.D. 243, 249, 169 N.W.2d 725, 729 (1969). In our recent holding of *Walz v. City of Hudson,* 327 N.W.2d 120, 122 (S.D.1982), we noted that "[n]egligence is the breach of a legal duty imposed by statute or common law." Importantly, we further reaffirmed in *Walz,* 327 N.W.2d at 123 n. 5, that a statute designed to protect South Dakota's citizenry must be construed with a "view to

---

**3.** The Alabama and New Hampshire Supreme Court decisions, supportive of this decision, were subsequent to our *McMacken, supra,* decision. *See* Henderson, J., dissenting opinion in *McMacken,* 325 N.W.2d at 61–2, for breakdown on rulings in 28 states. Analysis, not rhetoric, is the foundation of the cases supporting this opinion.

**4.** *See Leslie v. City of Bonesteel,* 303 N.W.2d 117 (S.D.1981), for the elements of actionable negligence which are: (1) A duty on the part of defendant; (2) failure to perform that duty; and (3) injury to plaintiff resulting from such failure.

effect its objects and to promote justice." We are convinced that appellants had, and have, vested statutory rights in a negligence standard pursuant to SDCL 34–39–10, regulations promulgated thereunder, common law, and case law.

We therefore hold that SDCL 15–2–9 and SDCL 15–2–12.1 are violative of, and repugnant to, constitutional provisions insuring the citizenry of open courts. *McMacken*, 320 N.W.2d 131, and *Mitchell Sch. Dist.*, 329 N.W.2d 138, are overruled. Summary judgments entered below which are inconsistent with this holding must be vacated. This decision contemplates that discovery procedures must necessarily follow as circumstances in each cause of action and defense require. Accordingly, we reverse and remand.

DUNN, J., and HECK and MARTIN, Circuit Judges, concur.

WOLLMAN, J., dissents.

HECK, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.

MARTIN, Circuit Judge, sitting for MORGAN, J., disqualified.

WOLLMAN, Justice (dissenting).

It is difficult to write a dissent to an opinion that relies upon rhetoric rather than reason to support the result it so fervently desires to reach. Talk of locks and shackles on our courtroom doors and of stamping out our citizens' causes of action makes good newspaper copy, but it is hardly the currency of serious analysis.

In *McMacken v. State*, 320 N.W.2d 131 (S.D.1982), we carefully considered an attack upon the constitutionality of SDCL 15–2–9 based upon Article VI, § 20, the open courts provision of our state constitution. We reaffirmed this court's decisions in *Simons v. Kidd*, 73 S.D. 41, 38 N.W.2d 883 (1949), and *Behrns v. Burke*, 89 S.D. 96, 229 N.W.2d 86 (1975), to the effect that Art. VI, § 20 guarantees a right of access to the courts for redress only of causes of action recognized under common law or by statute and does not in and of itself create

causes of action. A number of other courts, *see, e.g., Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983), and cases cited therein, have reached the same conclusion under similar constitutional provisions.

The consequences of today's opinion are potentially far broader than the opinion itself intimates. For example, does the holding in effect overrule our recent decision in *Grosz v. City of Sioux Falls*, 346 N.W.2d 446 (S.D.1984)? Does it overrule our decision in *Hunt v. Hunt*, 309 N.W.2d 818 (S.D.1981) (in which we purported to judicially abolish the common law tort of criminal conversation)? (Indeed, perhaps Justice Henderson and I will be forever foreclosed from reaffirming our views that the tort of alienation of affections should also be abolished.) Does today's opinion render a sinking morass the "safer legal ground" to which municipal employees may seek to flee to avoid the imposition of personal liability? *See Schaub v. Moerke*, 338 N.W.2d 109, 112 (S.D.1983) (Henderson, J., concurring specially). Open courts forsooth!

With respect to the purported statutory basis of liability that the majority holds survives the effect of the statutes in question, I need only quote the response of the Court of Appeals for the Eighth Circuit to a similar contention made in a case arising out of the accident that gave rise to these actions:

The appellants attempt to distinguish this case on the basis that their cause of action is not based simply on a common law negligence theory, but on violation of South Dakota safety statutes, which they assert is a wrong recognized by the law of the land. We find this distinction to be without merit. The effect of enactment of SDCL 15–2–9 and 15–2–12.1 was the abrogation of appellants' causes of action before they accrued. Therefore, any wrongs done to appellants were not recognized as wrongs by the law of the land.

*Van Den Hul v. Baltic Farmers Elevator Co.*, 716 F.2d 504, 512 (8th Cir.1983).

I would point out that since the date of our decision in *McMacken*, the following courts, and perhaps others, have upheld the validity of statutes similar to those in question here: *Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822 (Colo.1982); *Beecher v. White*, 447 N.E.2d 622 (Ind.App.1983); *Klein v. Catalano*, 386 Mass. 701, 437 N.E.2d 514 (1982); *Lamb v. Wedgewood South Corp.*, *supra.* [*]

If we were free to strike down statutes willy-nilly on the basis of our personal feelings, the result of the proposed opinion might be justifiable. Once this court, or any other court for that matter, starts down that road, however, I see no end in sight. Although it might well be a heady, enjoyable experience to correct what we may perceive to be unwise, ill-conceived legislation, I see no warrant for us to do so in the absence of palpably unconstitutional legislative action. The judiciary should not have to do penance for the sins of the legislature.

It will be interesting to see whether the life span of today's majority opinion will be as ephemeral as the composition of the court that produced it. However long lived today's interment of *McMacken*, the decision will do nothing to add to this court's reputation for constancy, consistency, and reasoned elaboration.

I would affirm the summary judgments.

---

[*] In addition to the post-*McMacken* decisions cited in footnote 3 of the majority opinion, *supra,* it should be noted that the Supreme Court of Rhode Island recently struck down that state's products liability limitations statute. *See Kennedy v. Cumberland Engineering Co., Inc.,* 471 A.2d 195 (R.I.1984). Needless to say, I agree with the dissenting opinion in that case.