RJR TECHNICAL CO. v. PRATT

[113 N.C. App. 511 (1994)]

---

RJR TECHNICAL COMPANY, aka R.J.R. TECHNICAL COMPANY, a CORPORATION, Plaintiff, STATE OF NORTH CAROLINA, ex rel, WILLIAM W. COBEY, JR., Secretary of the Department of Environment, Health and Natural Resources, Intervenor-Plaintiff v. TERRY PRATT and EUGENE LEE, Defendants

WILLIAM CULLEN CAPEHART, Plaintiff, STATE OF NORTH CAROLINA, ex rel, WILLIAM W. COBEY, JR., Secretary of the Department of Environment, Health and Natural Resources, Intervenor-Plaintiff v. RJR TECHNICAL COMPANY, aka R.J.R. TECHNICAL COMPANY, a Corporation, Defendant

No. 926SC1060

(Filed 1 February 1994)

1. **Waters and Watercourses § 6 (NCI3d)— grant conveying fee simple interest in lands under navigable waters—grants void— lands held in trust for public**

   Grants at issue in this case were void to the extent that they purported to convey a fee simple interest in the lands submerged beneath the navigable waters of the Albemarle Sound, since lands beneath navigable waters are held in trust

RJR TECHNICAL CO. v. PRATT

[113 N.C. App. 511 (1994)]

by the State for the benefit of the public, and any land grant in fee embracing such submerged lands is void.

**Am Jur 2d, Waters §§ 400-405.**

2. **Waters and Watercourses § 6 (NCI3d)— grant from State to plaintiff's predecessor—existence of exclusive right to fish navigable waters**

The decision of the Supreme Court in *Land Co. v. Hotel*, 132 N.C. 517, that a grant by the State under the Laws of 1854-55, Ch. 21 conveyed an exclusive easement for the purpose to erect wharves compels the Court of Appeals to hold that plaintiff owns an exclusive easement in the submerged lands described in the two grants in question for the limited purposes, including fishing, for which such grants were authorized by the General Assembly.

**Am Jur 2d, Waters §§ 400-405.**

Appeal by the State from judgment entered 21 July 1992 by Judge W. Russell Duke, Jr., in Bertie County Superior Court. Heard in the Court of Appeals 5 October 1993.

*Mary E. Ward and Pritchett, Cooke & Burch, by W. L. Cooke, for plaintiff-appellee.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Daniel F. McLawhorn and Special Deputy Attorney General J. Allen Jernigan, for the State.*

MARTIN, Judge.

These cases involve conflicting claims between plaintiff, RJR Technical Company (hereinafter RJR) and the State of North Carolina to two adjacent tracts of submerged land lying entirely beneath the navigable waters of the Albemarle Sound in Bertie County, known as the "Black Walnut Farm" water grant (containing approximately 568 acres) and the "Avoca Farm" water grant (containing approximately 620 acres). The parties agree that the lands in dispute are described in two grants from the State to William R. Capehart, issued 12 December 1892, and that RJR has the record chain of title thereto. The property was granted "together with all woods, waters, mines, minerals, Hereditaments, and appurtenances to the said land belonging or appertaining: To Hold, to the said Wm.

R. Capehart heirs and assigns, forever." The parties stipulated that RJR registered the grants as required by G.S. § 113-205(a). The State claimed title to the lands under the public trust doctrine.

The case was heard by the trial court sitting without a jury. On 21 July 1992 the trial court entered judgment holding that plaintiff is "the owner of . . . the properties described in" the grants and that the grants convey an exclusive appurtenance to the Black Walnut Farm tract and the Avoca Farm tract, both of which are owned by plaintiff, for the purpose of fishing. The State appealed.

The trial court found, in pertinent part:

2. The Court further finds as a fact that the grants for the two parcels of land at issue . . . convey an exclusive appurtenance for fishing.

. . .

4. The Court finds that from 1891 until 1893 the State of North Carolina was authorized by Chapter 532 of the laws of 1891 to grant a fee estate in lands submerged by navigable waters for the purpose of erecting wharfs or fish houses or for fishing in said waters. The grants at issue in this provision conveyed a fee estate and right to fish in such waters.

5. The Court further finds that the grants are appurtenances to the Black Walnut Farm and the Avoca Farm, which said parcels are now owned by plaintiff, RJR, and these appurtenances run with the ownership of the two farms described in the pleadings.

The trial court concluded, *inter alia*:

2. That the grants at issue convey an exclusive appurtenances (sic) to the lands of the plaintiff for the purpose of fishing.

. . .

4. That the grants at issue are owned by the plaintiff, RJR Technical Company a/k/a RJR Technical Company, a corporation, the plaintiff in this action.

The judgment of the court was as follows:

THEREUPON, IT IS ORDERED, CONSIDERED AND ADJUDGED that the plaintiff, RJR Technical Company, a corporation is the owner of and entitled to the possession of the properties described in Grants Nos. 11910 and 11911, . . . that the grants convey an exclusive appurtenance to the lands owned by the plaintiff, known as the Avoca Tract and the Black Walnut Tract . . . .

[1]    The State first asserts that the trial court erred when it found as fact that the grants "conveyed a fee estate" in the submerged lands and ruled that plaintiff "is the owner of" the property described in the grants. To the extent the judgment may be interpreted as holding that RJR owns a fee simple interest in the submerged lands pursuant to the grants, we must agree.

The grants were made pursuant to the Laws of 1854-1855, Ch. 21, § 2751, as amended by Chapter 532, Sess. Laws 1891, which provided as follows:

All vacant and unappropriated lands belonging to the state, shall be subject to entry by a citizen thereof, in the manner hereinafter provided, except:

(1) Lands covered by navigable waters: *Provided*, that persons owning land on any navigable water for the purpose of erecting wharves or fish-houses or fishing [in] said waters in front of their lands, may make entries of the land covered by said water, and obtain title as in other cases, but persons making such entries shall be confined to straight lines, including only the fronts of their own lands, and shall in no case extend a greater distance from the shore than one-fifth of the width of the stream, and shall in no respect obstruct or impair navigation[.]

The relevance of the 1891 amendment to the facts before us is that it expanded the purposes for which one could enter lands covered by navigable waters to include the erection of "fish-houses or fishing [in] said waters."

There is no dispute that the land in question is submerged beneath the navigable waters of the Albemarle Sound. Lands submerged beneath the navigable waters of this State are held in trust for the benefit of the public. *Land Co. v. Hotel*, 132 N.C.

517, 44 S.E. 39 (1903); *Development Co. v. Parmele*, 235 N.C. 689, 71 S.E.2d 474 (1952). Our Supreme Court has said:

> Navigable waters, then, are subject to the public trust doctrine, insofar as this Court has held that where the waters covering land are navigable in law, those lands are held in trust by the State for the benefit of the public. A land grant in fee embracing such submerged lands is void. *Land Co. v. Hotel*, 132 N.C. 517, 44 S.E. 39; *Wilson v. Forbes*, 13 N.C. (2 Dev.) 31 (1828).

*State ex rel. Rohrer v. Credle*, 322 N.C. 522, 527, 369 S.E.2d 825, 828 (1988).

Based on the decisions in *Credle, Land Co.*, and *Wilson*, we hold that the grants at issue are void to the extent that they purport to convey a fee simple interest in the lands submerged beneath the navigable waters of the Albemarle Sound.

[2] Next, we must determine whether the trial court correctly concluded that the grant to William Capehart conveyed an exclusive right to fish the waters contained in the grant. The State contends that the right to an exclusive fishery, also known as a "several fishery", has never existed in the navigable waters of the State. Although the State cites numerous cases which support this contention, none address the validity of a grant made pursuant to the statute here in issue. *See, Bell v. Smith*, 171 N.C. 116, 87 S.E. 987 (1916); *Daniels v. Homer*, 139 N.C. 219, 51 S.E. 992 (1905); *Hettrick v. Page*, 82 N.C. 65 (1880); *Collins v. Benbury*, 25 N.C. 277 (1842). Moreover, our review of the applicable cases reveals that in the past the General Assembly has authorized the creation of exclusive fisheries. In *State ex rel. Rohrer*, 322 N.C. 522, 369 S.E.2d 825, a case involving the right to cultivate oysters in navigable waters, the Supreme Court recognized that in 1887 the General Assembly permitted the creation of an exclusive fishery when it passed Chapter 119 of the 1887 Session Laws which allowed the conveyance of perpetual franchises for the purpose of raising and cultivating shellfish.

The State also argues the right to fish in the navigable waters of the State is a right held in trust for the benefit of the public and that we should not find that the General Assembly intended to convey those rights in the absence of language clearly declaring such an intent. *Land Co.*, 132 N.C. at 534, 44 S.E. at 44. In fur-

therance of this argument, the State correctly observes that the statute authorizing the grants did not specifically state that the right of entry for purposes of fishing was an exclusive right. If this case was the first in which a grant under this statute was construed, we might be inclined to agree with the State's contentions. However, the Supreme Court, in *Land Co.*, determined that grants under the statute were exclusive in nature.

In *Land Co.*, the Court considered the nature of a grant issued by the State under the Laws of 1854-1855, Chapter 21, § 2751. This statute provided that any person owning land on any navigable water could make entries of the lands covered by such water for the purpose of erecting wharves. The land in dispute in *Land Co.* was located beneath the navigable waters of Bogue Sound and adjacent to Morehead City. The plaintiffs contended that the grant conveyed the submerged land in fee simple. After an extensive review of the authorities from other jurisdictions, the Court concluded that "the grant . . . operated to give [the plaintiffs] an *exclusive* right or easement therein as riparian owners and proprietors to erect wharves, etc.; that when they ceased to be the owners of the land . . . such easement passed as appurtenant thereto[.]" (Emphasis added.) *Land Co.*, 132 N.C. at 541, 44 S.E. at 47.

The grants at issue in the present case were authorized by the same statute which was held in *Land Co.* to have authorized the conveyance of an exclusive right or easement. The only difference between the grant in the present case and the grant in *Land Co.* arises from the 1891 amendment to the statute allowing entries for the purpose of erecting "fish-houses or for fishing [in] said waters[.]" We can discern no legally substantive difference between an exclusive right of entry for the purpose of erecting wharves and an exclusive right of entry for the purpose of erecting fish-houses or fishing.

Where the Supreme Court has addressed and resolved an issue, this Court is bound, under the doctrine of *stare decisis*, to follow the decision of the Supreme Court. *Dunn v. Pate*, 106 N.C. App. 56, 415 S.E.2d 102 (1992), *rev'd on other grounds*, 334 N.C. 115, 431 S.E.2d 178 (1993). The decision of the Supreme Court in *Land Co.*, *supra*, that a grant by the State under the Laws of 1854-1855, Ch. 21 conveyed an exclusive easement for the purpose set forth therein, compels our holding in the present case that RJR owns

NATIONWIDE MUTUAL INS. CO. v. BAER

[113 N.C. App. 517 (1994)]

an exclusive easement in the submerged lands described in the two grants for the limited purposes, including fishing, for which such grants were authorized by the General Assembly. The judgment of the trial court so holding is affirmed.

In summary, to the extent the judgment of the superior court holds that RJR owns a fee simple interest in the submerged lands described in the grants, it must be reversed. Otherwise, the judgment below is affirmed.

Affirmed in part and reversed in part.

Judges WELLS and LEWIS concur.